No. 22-55794

# In the
# United States Court of Appeals
# for the Ninth Circuit

PAVEL FUKS,

*Plaintiff and Appellee,*

v.

Yuri Vanetik,

*Defendant and Appellant.*

On Appeal from the U.S. District Court for the Central District of California,
8:19-cv-01212-FLA-JDE
(District Judge Fernando L. Aenlle-Rocha).

## APPELLEE'S RESPONSIVE BRIEF

John W. Lomas, Jr.
William T. O'Brien
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street, NW, Ste. 700
Washington, DC 20001
202.220.8236 (phone)
202.637.3593 (fax)

Joseph R. Ashby
ASHBY LAW FIRM
811 Wilshire Blvd., 17th Floor
Los Angeles, CA 90017
213.817.7785 (phone)

*Attorneys for Plaintiff and Appellant Pavel Fuks*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ............................................................... i

TABLE OF AUTHORITIES .......................................................... iii

**INTRODUCTION** ......................................................................1

**ISSUES PRESENTED FOR REVIEW** ........................................2

**STATEMENT OF THE CASE** ....................................................3

    I.    Vanetik Induces Fuks To Pay $200,000 For A VIP Presidential Inauguration Ticket Package That Vanetik Never Delivered Nor Intended To Deliver ................................................................3

    II.    After Conducting A Multi-Day Bench Trial And Carefully Considering  The Parties' Proposed Conclusions Of Law And Findings Of Fact, The District Court Finds That Vanetik Committed Fraud And Breached The Parties' Contract .........................................8

**SUMMARY OF THE ARGUMENT** ................................................13

**ARGUMENT** ...............................................................................14

    I.    The District Court's Finding That Vanetik Acted With Fraudulent Is Not Clear Error, Thus The Court Should Affirm The Judgment For Fuks And Against Vanetik On Fuks's Promissory Fraud Claim ........14

        A.    The District Court's Finding That Vanetik Acted With Fraudulent Intent Is Reviewed For Clear Error .......................14

        B.    The District Court's Finding Of Fraudulent Intent Is Plausible, And Thus It Is Not Clearly Erroneous. .....................................16

        C.    Vanetik Fails To Apply The Appropriate Standard Of Review ..................................................................................17

    II.    The District Court Did Not Err In Finding That Vanetik Entered Into And Breached An Agreement In Writing With Fuks .................22

        A.    The District Court's Finding That Vanetik And Fuks Entered Into A Valid Written Contract Is Reviewed For Clear Error ..................................................................................22

B.     The District Court Did Not Err In Finding That Fuks And Vanetik Entered Into An Agreement In Writing Through Which Vanetik Was To Provide Fuks With A VIP Presidential Inauguration Ticket Package In Exchange For $200,000 ................................................................................. 23

C.     The District Court Did Not Err In Finding That Fuks Performed ..................................................................................... 29

D.     The District Court Did Not Err In Finding That Vanetik Breached  The Parties' Agreement And That Fuks Suffered Damages In The Amount Of $200,000 ..................................... 30

E.     The District Court Did Not Err In Finding Fuks Suffered Damages In The Amount Of $200,000 ..................................... 30

**CONCLUSION** ............................................................................................. 31

**STATEMENT OF RELATED CASES** ................................................... 33

**CERTIFICATE OF COMPLIANCE** ................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Bessemer City,*
470 U.S. 564 (1985)........................................................................22

*Beech Aircraft Corp. v. United States,*
51 F.3d 834 (9th Cir. 1995) (per curiam) ........................................21

*Bose Corp. v. Consumers Union of U.S., Inc.,*
466 U.S. 485 (1984)........................................................................15

*Burrow v. Timmsen*
(1963) 223 Cal.App.2d 283, 35 Cal.Rptr. 668 ................................26

*Bustamante v. Intuit, Inc.*
141 Cal. App. 4th 199 (2006) ........................................................28

*California Lettuce Growers v. Union Sugar Co.*
(1955) 45 Cal.2d 474, 289 P.2d 785................................................26

*Cooper v. Harris,*
581 U.S. 285 (2017)........................................................................21

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990)........................................................................15

*Engquist v. Oregon Dep't of Agric.,*
478 F.3d 985 (9th Cir. 2007) ..........................................................17

*Gilbrook v. City of Westminster,*
177 F.3d 839 (9th Cir. 1999) ..........................................................17

*Hangarter v. Provident Life and Accident Ins. Co.,*
373 F.3d 998 (9th Cir. 2004) ..........................................................17

*Harper v. City of Los Angeles,*
533 F.3d 1010 (9th Cir. 2008) ........................................................17

*Hennefer v. Butcher*
182 Cal.App.3d 492, 227 Cal.Rptr. 318 (1986) ..............................26

*Larwin–Southern California, Inc. v. JGB Investment Co.*
    101 Cal. App. 3d 626, 162 Cal.Rptr. 52 (1979) ...................................................26

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
    637 F.3d 939 (9th Cir. 2011) ...................................................17

*McCulloch v. Albert E. Price, Inc.*,
    823 F.2d 316 (9th Cir. 1987) ...................................................14

*Miller v. Safeco Title Insurance Co.*,
    758 F.2d 364 (9th Cir. 1985) ...................................................23

*Ocean Garden, Inc. v. Marktrade Co., Inc.*,
    953 F.2d 500 (9th Cir. 1991) ...................................................15

*Pavao v. Pagay*,
    307 F.3d 915 (9th Cir. 2002) ...................................................17

*Rozay's Transfer v. Local Freight Drivers, Local 208, Int'l Broth. of
    Teamsters, Chauffeurs, Warehousemen & Helpers of America*,
    850 F.2d 1321 (9th Cir. 1988) ...................................................14, 23

*Saltarelli v. Bob Baker Group Med. Trust*,
    35 F.3d 382 (9th Cir. 1994) ...................................................22

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
    574 US 318, 135 S.Ct. 831 (2015)...................................................22

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ...................................................17

*United States v. McConney*,
    728 F.2d 1195 (9th Cir. 1984) ...................................................23

*Vita Plan. & Landscape Architecture, Inc. v. HKS Architects, Inc.*,
    240 Cal. App. 4th 763, 192 Cal. Rptr. 3d 838 (2015) ...................................................27

*Yu v. Idaho State University*,
    15 F.4th 1236 (9th Cir. 2001) ...................................................14, 15

**Statutes**

Cal. Civ. Code, § 3390 ............................................................26

**Other Authorities**

1 Corbin on Contracts (1963) § 95 ............................................27

Circuit Rule 36-3(c) ...............................................................17

Federal Rule of Civil Procedure 52(a) ...................................... 1, 2, 14, 15

Ninth Cir. Model Jury Instr. (Civil) 1.14 (2017) .....................................10

**INTRODUCTION**

This is a simple case. After conducting a three-day bench trial, considering and weighing the evidence at trial, and evaluating the credibility of witnesses, the district court found that Defendant Yuri Vanetik agreed in writing to provide Plaintiff Pavel Fuks with a VIP presidential inauguration ticket package in exchange for $200,000, did so with the intention not to perform, and ultimately did not perform. The district court accordingly entered judgment in Fuks's favor on his promissory fraud and breach of contact claims and awarded Fuks the $200,000 he paid for the package with pre-judgment and post-judgment interest.

In this appeal, Vanetik invites the court to overstep the bounds of its duty under Federal Rule of Civil Procedure 52(a)(6) and disregard the district court's credibility determinations, show no deference to the district court's findings of fact, and substitute an alternative—and implausible—view of the evidence for the district court's well-founded and well-reasoned view.

This Court should decline Vanetik's invitation and affirm.

## ISSUES PRESENTED FOR REVIEW

(1)     Whether the district court's finding that Vanetik acted with fraudulent intent is a plausible view based on the evidence offered at trial.

(2)     Whether the district court's findings that the parties entered into a valid written agreement, Vanetik breached the agreement, and Fuks was damaged in the amount of $200,000 are a plausible view based on the evidence offered at trial.

## STATEMENT OF THE CASE

**I.     Vanetik Induces Fuks To Pay $200,000 For A VIP Presidential Inauguration Ticket Package That Vanetik Never Delivered Nor Intended To Deliver**

Plaintiff Pavel Fuks and Defendant Yuri Vanetik met for the first time in the spring of 2016, when Fuks's close friend Gennady Kernes—then mayor of Kharkiv, Ukraine—introduced Fuks to Vanetik. 2-ER-36–37. At that time, Vanetik hoped to be retained by the city of Kharkiv to promote its interests in the United States, and Vanetik claimed to be well-connected politically in the United States. 2-ER-36–37. After that initial meeting, Fuks and Vanetik kept in touch and communicated with each other via text message using the WhatsApp Messenger mobile phone application. 2-ER-38–41; 3-ER-379–407.

In the fall of 2016, Fuks and Vanetik exchanged messages about the United States presidential election. 3-ER-398. After Donald Trump won the election, Vanetik told Fuks that some of his close friends had received major appointments. 3-ER-400. On November 16, 2016, Vanetik noted the inauguration was set to take place on January 20, 2017, and advised Fuks the "[t]ime to book everything [to attend the inauguration] is now." 3-ER-400. Vanetik elaborated that "[t]here are guests that get tickets [to the inauguration] and guests that get VIP treatment. Regular attendance is a joke." 3-ER-400.

On November 17, 2016, Vanetik told Fuks the "[t]ime to get tickets is next 5 days. Then, they go up. Next year they will be at least 3 times the price – at best." 3-ER-400. Fuks responded he wanted to buy "the very best," and asked Vanetik how much the tickets would cost. 3-ER-400. Vanetik responded he would verify costs and "explain several options." 3-ER-400. On November 18, 2016, Vanetik messaged Fuks: "Best VIP 100k per person. 3 days includes top briefings tickets to inaugural ball, etc. photo opps most likely. There are levels below that as well." 3-ER-400.

Vanetik further noted that "[h]otels should be booked now and payments handled as soon as possible." *Id.* Fuks responded he would take two "VIP" tickets. 3-ER-400; 2-ER-54–55. Vanetik responded: "Passports email to me. Will send you wire information later today," and gave his email address to Fuks. 3-ER-400.

Initially, Vanetik instructed Fuks to wire payment to a Citibank account for his attorney's client trust account—"Hamilton Law Offices Client Trust Account." 3-ER-400; 2-ER-54–56. Vanetik also instructed Fuks to note that the wire was for "legal services." 3-ER-400. Two days later, however, Vanetik sent an invoice for $200,000 to Fuks's coworkers via email, and asked Fuks to pay in accordance with that invoice instead. 2-ER-54–56; 3-ER-408–409. The following day, on November 22, 2016, and in accordance with Vanetik's request, Fuks had $200,000

for the "VIP" tickets wired from an account held by his company BEM Global to an account specified by Vanetik. 2-ER-54–56, 75–76; 3-ER-410.

Fuks asked Vanetik when he would send the program of events for the package he had purchased. 3-ER-401; 2-ER-60–62. A few days later, on November 29, 2016, Vanetik messaged Fuks: "Hi Pavel. Everything is done. I now have what seems to be the final layout. There are a few 'nuances' to go over. Let's chat a little later." 3-ER-401. Vanetik then sent Fuks the following details for the "VIP package" Fuks had purchased:

- Cabinet Dinner – 2 tickets

- Victory Reception – 4 tickets

- Inaugural Concert and Fireworks – 4 tickets

- Parade – 4 VIP Tickets

- Inaugural Ball Premier Access – 2 tickets

- Presidential Swearing-In Ceremony – 2 tickets

3-ER-401; 2-ER-61.

Fuks asked Vanetik to confirm that all the tickets that Vanetik had listed in his message were, in fact, the events of the "VIP" package Fuks had purchased. 3-ER-401; 2-ER-61. Vanetik confirmed they were and stated there were also "a few extras." 3-ER-402; 2-ER-61.

More than six weeks later, and just a week before the inauguration, Vanetik told Fuks there were "tons of changes to the program." 3-ER-404. Fuks asked Vanetik to send him the schedule of all events. 3-ER-405. Vanetik responded: "Hey Pavel. I just arrived to DC. I am waiting for a revised one. There is a problem with dinner. Trying to fix it... should have it in am. What time are you flying in?" 3-ER-405.

Fuks responded he was arriving on January 19, 2017, the day before the inauguration. 3-ER-405. Vanetik replied: "I will send you schedule in about an hour or so. We got fucked on the dinner. I am working on fixing it. I hate this Inauguration. It is nothing but headaches. It would be better if you came tomorrow or today." 3-ER-405.

During Fuks's time in Washington, Vanetik never gave Fuks tickets to the cabinet dinner, victory reception, inaugural concert and fireworks, parade, inaugural ball, or presidential swearing-in ceremony. 2-ER-64–66, 69. Vanetik was often unavailable and did not answer his telephone. 2-ER-68–69. Vanetik did provide Fuks with three tickets to an event hosted by the Texas State Society the day before the inauguration called "Black Tie & Boots," which Vanetik had purchased one week prior for $2,500 each. SER-3–5; 2-ER-66.

The morning of the inauguration, Vanetik told Fuks he would have a driver pick up Fuks and his guests. 3-ER-405–406; 2-ER-67. The car never arrived. 2-ER-67.

As a result, Fuks and his party walked towards the inauguration site in the rain in the hopes of attending. 2-ER-67–68. When they approached an access point to the inauguration, they were refused entry because they did not have passes. 2-ER-67–68. Fuks and his guests returned to their hotel, where they watched the inauguration ceremony on television at the hotel bar. 2-ER-68.

Later that day, Vanetik sent a car to take Fuks and his guests to a party located in a midrise building overlooking the Capitol. 2-ER-69. By the time Fuks arrived, most attendees had left, the food had been eaten, and the staff had begun cleaning up. 2-ER-69, 113. Fuks left Washington on January 21, 2017, the day after the inauguration. *See* 3-ER-406.

Via WhatsApp message, Fuks asked Vanetik to let him know when it would be a convenient time to discuss a refund. 3-ER-406. Vanetik told Fuks he did not receive tickets to inaugural events because Vanetik had been cheated by third parties organizing the events. 2-ER-71–72. Fuks asked Vanetik to work with Fuks's lawyers to recover the money, identify who had cheated him, and provide documentation, such as receipts, showing payments for event tickets. 2-ER-71; 3-ER-406–407. Vanetik agreed to do so, but never did. 2-ER-117–118; 2-ER-73–75.

7

On March 8, 2017, Fuks requested an update from Vanetik. 3-ER-406. Vanetik responded the next day, stating he could not send Fuks the agreements with third parties who had organized events due to a non-disclosure agreement. 3-ER-406–407. Vanetik never provided Fuks with a copy of the alleged non-disclosure agreement. 2-ER-75; ER-406–407.

Another month passed, and Fuks again asked Vanetik to provide documentation that supported Vanetik's story. 3-ER-407. On April 8, 2017, Fuks wrote to Vanetik: "Dear Yuri, you promised to give me the contact info of the people who cheated me and took my money. I'm planning to get the money from them through the court." 3-ER-407.

Vanetik did not respond. 3-ER-407. Fuks followed up on May 9, 2017, asking when Vanetik would return the $200,000. 3-ER-407. Vanetik responded: "So now you crossed the line. Get this straight: I do not owe you … any money. In fact, you owe us for the meetings in Rome and subsequent work." 3-ER-407. Vanetik never refunded Fuks (nor BEM Global) the $200,000. 2-ER-74–78.

## II. After Conducting A Multi-Day Bench Trial And Carefully Considering The Parties' Proposed Conclusions Of Law And Findings Of Fact, The District Court Finds That Vanetik Committed Fraud And Breached The Parties' Contract

The district court held a three-day bench trial beginning September 21, 2021. 1-ER-4–5. Fuks and Vanetik told vastly different stories at trial. 1-ER-5.

In short, Fuks testified he paid Vanetik $200,000 in November 2016 for two "VIP" packages for the 2017 presidential inauguration that never came to fruition. 1-ER-5; 2-ER-54-76; Ex. 3.

Defendant, on the other hand, testified that this payment was not related to the inauguration, but was a partial payment for consulting services his company, Odyssey Management LLC ("Odyssey"), performed in April 2016 for Fuk's friend, Gennady Kernes. 1-ER-5. Specifically, Vanetik testified that Odyssey was engaged in two agreements concerning the Kernes project: (1) Vanetik would fly to Rome, Italy and create a strategy memorandum for $65,000; and (2) Vanetik would perform additional consulting services for a $250,000 initial retainer and $50,000 monthly retainer for six months. 1-ER-5.

Given this, the district court explained that its judgment ultimately hinged on whether it believed Fuks or Vanetik.[1] 1-ER-5. The court devoted an entire section of its decision to its assessment of the credibility of Fuks and Vanetik. 1-ER-5–8. Based on the testimony and documentary evidence offered at trial—including testimony that each party gave in response to questions from the court—the court

---

[1] Vanetik also called Khuseyn Dundaevich Agaev to testify on Vanetik's behalf. 3-ER-289-294. Agaev appeared by videoconference through his mobile phone from the back of a car parked somewhere in Moscow during the evening hours there. 3-ER-289-294. There were issues with Agaev's phone connection (3-ER-289-294), and his testimony lacked credibility and had no relevance to the issues in this case.

found Fuks' testimony credible and Vanetik's testimony "***incredible***." 1-ER-6–8 (emphasis added).

The district court noted that it found instructive Ninth Circuit Model Jury Instruction 1.14, which provides guidance to jurors to assess the credibility of witnesses. 1-ER-6. This instruction identifies the following factors that jurors may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Ninth Cir. Model Jury Instr. (Civil) 1.14 (2017).

At trial, the court admitted into evidence Plaintiff's Exhibit 1, consisting of message exchanges between Fuks and Vanetik on the WhatsApp Messenger

mobile phone application. The court found the contemporaneous WhatsApp messages and chronology of events supported Fuks's assertion that the $200,000 payment was for two "VIP" inauguration packages. 1-ER-6–7.

At trial, Vanetik claimed that the WhatsApp messages in Exhibit 1 were fabricated or out of sequence. 2-ER-203–206, 209–212. But the district court found that Fuks credibly testified that he exported all WhatsApp messages between himself and Defendant into a data file to produce Exhibit 1, and did not alter any messages. 1-ER-6–7; 2-ER-38–52.

The district court noted that Vanetik did not offer his own fulsome version of WhatsApp messages into evidence to compete with Exhibit 1, but rather a small sample of messages that matched the messages in Exhibit 1, corroborating Exhibit 1's authenticity. 1-ER-7. Vanetik also claimed that the Federal Bureau of Investigation took his mobile telephone in February 2017 to investigate threats Fuks made to him, and the small sample of messages in Exhibit 13 were what he could find upon return of the telephone. 2-ER-222–223, 237–238.

Ultimately, the district court found Vanetik's version of events to be "***incredible***". 1-ER-7 (emphasis added).

The court noted that Vanetik offered no documents or emails showing Odyssey had performed consulting work for Kernes. 1-ER-7. The court further noted that Vanetik submitted into evidence a document dated September 21, 2016,

entitled "ODYSSEY — PAVLO FUKS Confidential Consulting Agreement," but the court found that Fuks credibly testified he had never seen the document and the signature on the last page was not his. 1-ER-7.

The court added that while the $200,000 invoice sent to BEM Global on November 21, 2016 purported to be for an "Earned retainer" for "Project Analysis, business plan development, and Due Diligence; legal and accounting management; public relations," Fuks had credibly testified that Vanetik required the invoice for the "VIP" tickets to be labeled in this manner. 1-ER-7–8. Vol. I at 36.

The court also highlighted the timing of the $200,000 payment—only four days after Vanetik told Fuks he would buy two "VIP" tickets costing $100,000 per person—as further demonstrating the credibility of Fuks's testimony credible and the incredibility of Vanetik's testimony. 1-ER-7–8.

In sum, the district court found Fuks's testimony regarding the sequence of events more credible than Vanetik's, and supported by the WhatsApp messages in Exhibit 1, which the court found to be authentic and controlling and to clearly establishing that the $200,000 payment was for two "VIP" packages for the 2017 presidential inauguration. 1-ER-8.

## SUMMARY OF THE ARGUMENT

Vanetik's sole challenge to the judgment against him on Fuks's promissory estoppel claim is to the sufficiency of the evidence for the district court's finding that Vanetik acted with fraudulent intent when he promised to provide Fuks with a VIP presidential inauguration ticket package. The district court's finding is well-supported by the evidence presented at trial and consistent with the district court's credibility determinations. Vanetik does not, and cannot, show that the district court's finding is implausible, and, thus cannot meet the high burden of establishing that the district court committed clear error. This Court should affirm.

Vanetik makes several challenges to the judgment against him on Fuks's breach of contract claim. Though Vanetik suggests that this Court should apply a *de novo* review, Vanetik's arguments primarily concern questions of fact for which the court considered and weighed oral and documentary evidence and, in some instances, requires that this Court improperly disregard the district court's credibility determinations. Vanetik does not and cannot establish any error by the district court, and thus the Court should affirm.

# ARGUMENT

**I.   The District Court's Finding That Vanetik Acted With Fraudulent Is Not Clear Error, Thus The Court Should Affirm The Judgment For Fuks And Against Vanetik On Fuks's Promissory Fraud Claim**

### A.    The District Court's Finding That Vanetik Acted With Fraudulent Intent Is Reviewed For Clear Error

Whether a party acted with fraudulent intent is a question of fact. *Rozay's Transfer v. Local Freight Drivers, Local 208, Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 850 F.2d 1321, 1326-1327 (9th Cir. 1988) (abrogation on other grounds recognized by *Nu Image, Inc. v. International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists & Allied Crafts of the United States, Its Territories & Canada AFL–CIO*, CLC, 893 F.3d 636, 640 (9th Cir. 2018)).

The district court resolved the Fuks's fraud claim and the specific issue of whether Vanetik acted with fraudulent intent after a bench trial. "'Following a bench trial, the judge's findings of facts are reviewed for clear error.'" *Yu v. Idaho State University*, 15 F.4th 1236, 1241-42 (9th Cir. 2001) (quoting *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 (9th Cir. 2004)); *see also McCulloch v. Albert E. Price, Inc.,* 823 F.2d 316, 318 (9th Cir. 1987).

Federal Rule of Civil Procedure 52(a), which governs the review, provides that a party may "question the sufficiency of the evidence supporting the findings," but that the trial judge's "[f]indings of fact . . . must not be set aside unless clearly

14

erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(5)-(6).

Pursuant to the clearly erroneous standard, judicial findings of fact are presumptively correct. *See Bose Corp. v. Consumers Union of U.S., Inc*., 466 U.S. 485, 500 (1984). Under this "significantly deferential" standard, this Court "accept[s] the lower court's findings of fact unless [this Court is] left with the definite and firm conviction that a mistake has been committed." *Yu*, 15 F.4th at 1241 (citing *N. Queen Inc. v. Kinnear*, 298 F.3d 1090, 1095 (9th Cir. 2002)). Thus, this Court will "'reverse only if the district court's findings are clearly erroneous to the point of being illogical, implausible, or without support in inferences from the record.'" *Id*. (citing *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 613 (9th Cir. 2020)).

"In practice, the 'clearly erroneous' standard requires the appellate court to uphold any district court determination that falls within a broad range of permissible conclusions." *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 400–01 (1990). As this Court once articulated, "[t]o be clearly erroneous, a decision must … strike [a court] as wrong with the force of a five-week old, unrefrigerated dead fish" *Ocean Garden, Inc. v. Marktrade Co., Inc*., 953 F.2d 500, 502 (9th Cir. 1991) (internal quotes omitted).

**B.    The District Court's Finding Of Fraudulent Intent Is Plausible, And Thus It Is Not Clearly Erroneous.**

At trial, the district court admitted into evidence Plaintiff's Exhibit 1, consisting of message exchanges between Fuks and Vanetik on the WhatsApp Messenger mobile phone application. Vanetik is not challenging the district court's admission of Exhibit 1 into evidence. As the district court recited in its opinion, the WhatsApp messages in Exhibit 1 show that:

- Vanetik promised to provide Fuks a "VIP" inauguration events package for two people;

- Vanetik did not provide Fuks a list of the events included in the supposed package Fuks had bought until several days after Fuks paid,;

- Vanetik changed the events purportedly included in the package several times;

- Vanetik did not provide tickets for events he had 'confirmed' were included in the package; and

- when Fuks confronted Vanetik with the lack of tickets to inaugural events, Vanetik ultimately blamed unnamed third parties who appeared to have played no role in the events stated.

1-ER-10–13.

Given this evidence, the district court's finding that "Vanetik intended for Fuks to rely on Vanetik's promise to provide two 'VIP' inaugural packages to

16

induce Fuks to pay Odyssey $200,000, and that Vanetik did not intend to perform at the time the promise was made,'" is far more than just plausible, and thus the finding is not clearly erroneous.

### C. Vanetik Fails To Apply The Appropriate Standard Of Review

#### 1. Vanetik identifies the wrong standard of review.

In the opening brief, Vanetik includes a perfunctory statement that the standard of review is "whether there is substantial evidence to support the conviction." Appellant's Br. at 29. The only support Vanetik offers for this assertion is an unpublished memorandum of this Court from 1997 concerning an appeal of a *conviction* after a *jury* trial in a *criminal* case. *See id.* (citing *U.S. v. Rodriguez-Acosta* 124 F.3d 214 (Table), 1997 WL 599347 (9th Cir. 1997)).[2] Vanetik's appeal here, however, is of a *judgment* after a *bench* trial in a *civil* case.[3]

---

[2] Vanetik's citation to this memorandum is contrary to Circuit Rule 36-3(c).

[3] A "substantial evidence" standard applies when an appellate court is reviewing a jury verdict. *See Hangarter v. Provident Life and Accident Ins. Co*., 373 F.3d 998, 1008 (9th Cir. 2004); *see also Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw a contrary conclusion from the evidence. *See Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *see also McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 955 (9th Cir. 2011); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). The appellate court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999); *see also McCollough*, 637 F.3d at 957; *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).

### 2. Vanetik's arguments fail to apply and fail to meet the requisite clear error standard.

Vanetik makes three arguments concerning the district court's finding of fraudulent intent. None applies or meets the clearly erroneous standard.

<u>First</u>, Vanetik erroneously argues—without any citation to authority—that the district court's finding that Vanetik made a promise that he did not intend to perform with the court's finding that Vaneitk did not make an actionable misrepresentation of a past or existing fact. Appellant's Br. at 29. This argument fails to apprehend the fundamental difference between a promissory estoppel claim and an intentional misrepresentation claim. A promissory estoppel claim addresses a false promise to perform in the *future*, whereas an intentional misrepresentation claim addresses a knowingly false statement about some *past* or *present* fact.

<u>Second</u>, Vanetik recasts and mischaracterizes selected evidence in summary form to argue for an alternative interpretation of Vanetik's conduct—that he made extensive efforts to deliver the promised VIP inauguration package. Appellant's Br. at 30. But this spin is at odds with the contemporaneous WhatsApp messages that the court found authentic and controlling (1-ER-8)—a finding that Vanetik does not challenge in this appeal. These WhatsApp messages establish that:

- On November 16, 2016, Vanetik noted the presidential inauguration was set to take place on January 20, 2017, and advised Fuks that the "[t]ime to book everything [to attend the inauguration] is now," and that "[t]here

18

are guests that get tickets and guests that get VIP treatment. Regular attendance is a joke."

- Fuks asked Vanetik how much the VIP tickets would cost and Vanetik told him "Best VIP 100k per person. 3 days includes top briefings tickets to inaugural ball, etc., photo opps most likely. There are levels below that as well."

- Fuks paid $200,000 for the VIP tickets in accordance with Vanetik's instructions.

- Fuks asked Vanetik to send the program.

- A few days later, Vanetik confirmed that "[e]verything is done" and that the "VIP package" Fuks had bought included: two tickets to the Cabinet Dinner, four tickets to the Victory Reception, four tickets to the Inaugural Concert and Fireworks, four VIP Parade tickets, four dInaugural Ball Premier Access tickets; and two tickets to the Presidential Swearing-In Ceremony.

- Later, in January, less than two weeks before the inauguration, Vanetik started providing his cover up story—telling Fuks that "there are tons of changes to the program" and that they "got fucked on the dinner."

- Vanetik pulled a bait and switch—providing Fuks with three tickets to a Texas State Society event called the "Black Tie & Boots" (which

19

> Vanetik had purchased one week prior for $2,500 each) instead of the four Inaugural Ball Premier Access tickets that were part of the VIP package for which Fuks had paid Vanetik $200,000.

3-ER-400–406.

Vanetik also never gave Fuks the promised tickets to the cabinet dinner, victory reception, inaugural concert and fireworks, parade, inaugural ball, or presidential swearing-in ceremony. Vol. I at 42-44, 47. And while Fuks was in Washington DC, Vanetik was often unavailable and did not answer his telephone when Fuks called. Vol. I at 46-47.

Vanetik's alternative interpretation also improperly relies on a version of events that Vanetik gave during his trial testimony—testimony that the district court found to be "*incredible*."[4] 1-ER-7 (emphasis added). The federal appellate

---

[4] As the district court acknowledged, this is not the first time that Vanetik has committed fraud. In another case, a California jury found that Vanetik and his father induced one of Vanetik's friends to invest $750,000 in an oil exploration company so that it could start production on oil wells, but that Vanetik and his father instead used that money to pay off their own pre-existing debts.

After the jury found against him, Vanetik sought a new trial. The trial court rejected that request, finding that:

> "[Vanetik and his father] were the artful puppeteers who masterminded the scam that relieved the plaintiff of $750,000. That money was used to personally enrich [Vanetik and his father] and enable them to travel the world trolling for more big fish. Not a spoonful of dirt was turned in any Russian oil fields. As near the court

courts are to grant "singular deference to the trial court's judgments about the credibility of witnesses." *Cooper v. Harris*, 581 U.S. 285, 309 (2017) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)). As this Court explains: "An appellate court must be especially reluctant to set aside a finding based on the trial judge's evaluation of conflicting lay or expert oral testimony." *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 838 (9th Cir. 1995) (per curiam).

Third, Vanetik attempts to discount the district court's inference that Vanetik "may have even intended to falsely offer Fuks a 'VIP' inauguration experience to induce Fuks to pay Odyssey for consulting services Defendant believed he was owed for the Kernes project." In doing so, Vanetik again improperly relies on his own testimony that the district court found incredible.

As the Supreme Court has recognized, even when "a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each

---

can recall, there was no testimony that either of these defendants ever even visited the oil fields with any of the plaintiff's money in their pockets. The jury had little trouble concluding that the Vanetiks should be personally liable for the misdeeds committed behind the screen of some corporate name."

SER-36. Vanetik appealed, but the Court of Appeal for the Fourth Appellate District affirmed, finding "substantial evidence supported the jury's verdict against Vanetik and his father on the claims for breach of written contract, breach of oral contract, and fraud." SER-21.

of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985).

At trial, Fuks told a coherent, facially plausible and credible story that is consistent with the extrinsic evidence. Vanetik, on the other hand, told an incoherent, implausible and incredible story that was is not consistent with the extrinsic evidence. Accordingly, there is no basis from which to find the district court committed a clear error, and this Court should affirm the judgment in Fuks's favor on his promissory estoppel claim.[5]

## II.   The District Court Did Not Err In Finding That Vanetik Entered Into And Breached An Agreement In Writing With Fuks

### A.   The District Court's Finding That Vanetik And Fuks Entered Into A Valid Written Contract Is Reviewed For Clear Error

As noted above, this Court reviews a district court's findings of fact for clear error. This standard applies whether the district court's findings are based on oral or documentary evidence. *Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 384 (9th Cir. 1994). The standard also "applies to both subsidiary and ultimate facts." *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc*., 574 US 318, 324, 135 S.Ct. 831, 837 (2015).

---

[5] Given the full amount of damages awarded by the district court apply to either or both Fuks's fraud claim and his breach of contract claim, there is no need for this Court to address Vanetik's challenges to the breach of contract claim.

In a contract case, a district court's findings concerning a party's specific intent to induce another into entering into an agreement is a factual determination reviewed for clear error. *Rozay's Transfer*, 850 F.2d at 1326-1327. This Court will not disturb the district court's interpretation of a contract that looks to extrinsic evidence of what the parties said and did unless it is clearly erroneous. *Miller v. Safeco Title Insurance Co*., 758 F.2d 364, 367 (9th Cir. 1985).

To the extent the Vanetik challenges pure conclusions of law, those challenges are reviewed under a *de novo* standard. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

**B. The District Court Did Not Err In Finding That Fuks And Vanetik Entered Into An Agreement In Writing Through Which Vanetik Was To Provide Fuks With A VIP Presidential Inauguration Ticket Package In Exchange For $200,000.**

**1. The Court Did Not Err In Finding That Fuks And Vanetik Were The Parties To The Agreement**

Vanetik erroneously argues that the evidence was insufficient to identify Fuks and Vanetik as the parties to the agreement at issue.

In finding that an agreement existed between Fuks and Vanetik, the district court considered the parties' oral testimony and the documentary exhibits offered at trial, and assessed the credibility of witnesses. Thus, the clear error standard of review applies.

There is no dispute that Fuks and Vanetik, using each's respective mobile phone, exchanged WhatsApp messages that the district court found constituted the parties' agreement. As shown in the excerpts of Exhibit 1 (*see* 3-ER-400–401) reproduced below, Vanetik quoted to Fuks in writing a price of $100,000 per person for the "Best VIP" ticket package, and Fuks accepted and ordered two ticket packages.

16.11.16, 23:44:29: PF: HI, we definitely have to see each other. Maybe we can get to Trump at the inauguration
16.11.16, 23:46:39: Yura USA Vanetik: Yes. The question is in what capacity.
16.11.16, 23:47:52: PF: As a guest, I want to come with Vitalik and my wives
16.11.16, 23:50:11: Yura USA Vanetik: Let's chat then and I will explain a few things. It is January 20th. Time to book everything is now. I probably will not be there, as I have a congressional delegation to Cuba 18 to 24th with Gen Next.
16.11.16, 23:50:49: Yura USA Vanetik: There are guests that get tickets and guests that get VIP treatment. Regular attendance is a joke.
17.11.16, 0:33:23: Yura USA Vanetik: I will explain when we talk.
17.11.16, 0:51:44: PF: OK
17.11.16, 4:03:21: Yura USA Vanetik: Time to get tickets is next 5 days. Then, they go up. Next year they will be at least 3 times the price - at best.
17.11.16, 10:52:44: PF: How much do they cost, I'm ready to buy the very best
17.11.16, 19:56:38: Yura USA Vanetik: Let me verify costs. call me and I will explain several options.

18.11.16, 19:43:36: Yura USA Vanetik: Best VIP 100k per person. 3 days includes top briefings tickets to inaugural ball, etc. photo opps most likely. There are levels below that as well.
18.11.16, 19:44:21: Yura USA Vanetik: Hotels should be booked now and payments handled as soon as possible.
18.11.16, 22:54:25: PF: I'll take two tickets, when is it and what kind of documents are needed from me?
18.11.16, 22:49:16: Yura USA Vanetik: Passports email to me. Will send you wire information later today.

19.11.16, 0:16:53: Yura USA Vanetik: Beneficiary :"Hamilton Law Offices Client Trust Account" Address: 5757 W Century Blvd. Suite 700, Los Angeles, CA 90045
Tel. 310 3482938
Swift: CITIUS33
Routing Number:322271724
Account: 206333650
Bank: CITIBANK
Bank address: 8800 S Sepulveda Blvd. Los Angeles, CA 90045; tel. 800 374 9700

29.11.16, 21:06:49: Yura USA Vanetik: Hi Pavel. Everything is done. I now have what seems to be the final layout. There are a few "nuances" to go over. Let's chat a little later.
29.11.16, 21:12:29: PF: Hi, Thanks, I'll wait for a call.
30.11.16, 1:51:50: Yura USA Vanetik: Cabinet Dinner – 2 tickets
Victory Reception – 4 tickets
Inaugural Concert and Fireworks – 4 tickets
Parade – 4 VIP Tickets
Inaugural Ball Premier Access – 2 tickets
Presidential Swearing-In Ceremony – 2 tickets
This is the VIP package that we bought. There are corp VIP packages as well. I will review everything tonight and will connect with you tomorrow am or this evening (your am)
30.11.16, 1:57:48: PF: Thanks
30.11.16, 11:52:55: Yura USA Vanetik

Excerpted from 3-ER-400–401.

Vanetik's argument that—per Vanetik's subsequent request—Fuks had the $200,000 payment wired from a bank account for his company BEM Global to a bank account for Vanetik's company Odyssey Management makes it impossible to identify Fuks and Vanetik as the agreement has no merit.

First, it is clear from the WhatsApp messages that form the written agreement and from the oral testimony that the district court deemed credible, that Fuks and Vanetik are the parties to the simple and straightforward agreement at issue. 3-ER-400–401.

Second, neither Fuks nor Vanetik make any mention of BEM Global or Odyssey in the messages comprise the offer and acceptance. *See* 3-ER-400–401.

Third, Vanetik initially requested that Fuks have his payment to Vanetik wired to his attorney's client trust account on Vanetik's behalf. *See* 3-ER-400.

Fourth, Vanetik offers no legal authority that stands for the proposition that a subsequent change to the mechanics of a payment made under the contract somehow changes or makes it impossible to identify the parties to the agreement.[6]

---

[6] Vanetik instead cites to numerous irrelevant decisions concerning corporations and LLCs being legal entities that are separate from their shareholders and members.

### 2. The Court Did Not Err In Finding Mutual Assent

Vanetik next erroneously argues that the evidence was insufficient to establish mutual assent because, as Vanetik claims, "the specifics of what events would be included and the cost for the [VIP] package was entirely unclear up to almost the date of the actual inauguration." *See* Appellant's Br. at 30.

Although an agreement cannot be specifically enforced unless the terms are "sufficiently certain to make the precise act which is to be done clearly ascertainable" (Cal. Civ. Code, § 3390, subd. 5), the law favors carrying out the parties' intentions through the enforcement of contracts and disfavors holding them unenforceable because of uncertainty. *California Lettuce Growers v. Union Sugar Co.*, 45 Cal.2d 474, 481, 289 P.2d 785 (1955); *Larwin–Southern California, Inc. v. JGB Investment Co.*, 101 Cal.App.3d 626, 641, 162 Cal. Rptr. 52 (Ct. App. 1979); *Burrow v. Timmsen*, 223 Cal.App.2d 283, 288, 35 Cal.Rptr. 668 (Ct. App. 1963). "The defense of uncertainty has validity only when the uncertainty or incompleteness of the contract prevents the court from knowing what to enforce." *Hennefer v. Butcher*, 182 Cal.App.3d 492, 500, 227 Cal.Rptr. 318 (Ct. App.1986).

At bottom, "[i]f the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice

among conflicting meanings and the filling of some gaps that the parties have left."
1 Corbin on Contracts (1963) § 95, p. 400.

"Mutual assent is a question of fact." *Vita Plan. & Landscape Architecture, Inc. v. HKS Architects, Inc*., 240 Cal. App. 4th 763, 192 Cal. Rptr. 3d 838 (2015) (internal citations omitted). Given the district court findings on contract formation are rooted in its consideration of the parties' oral testimony and the documentary exhibits offered at trial, and its assessment of the credibility of witnesses, the clear error standard of review applies.

As the district court rightfully found (1-ER-17–18), and as shown below, the written WhatsApp messages exchanged between Fuks and Vanetik in November 2016 show Vanetik specifically identified the six events and number of tickets to those events that constitute the two VIP packages Vanetik agreed to provide Fuks in exchange for $200,000 ($100,000 per package ) (3-ER-400–401).

> 16.11.16, 23:44:29: PF: Hi, we definitely have to see each other. Maybe we can get to Trump at the inauguration
> 16.11.16, 23:46:39: Yura USA Vanetik: Yes. The question is in what capacity.
> 16.11.16, 23:47:52: PF: As a guest, I want to come with Vitalik and my wives
> 16.11.16, 23:50:11: Yura USA Vanetik: Let's chat then and I will explain a few things. It is January 20th. Time to book everything is now. I probably will not be there, as I have a congressional delegation to Cuba 18 to 24th with Gen Next.
> 16.11.16, 23:50:49: Yura USA Vanetik: There are guests that get tickets and guests that get VIP treatment. Regular attendance is a joke.
> 17.11.16, 0:33:23: Yura USA Vanetik: I will explain when we talk.
> 17.11.16, 0:51:44: PF: OK
> 17.11.16, 4:03:21: Yura USA Vanetik: Time to get tickets is next 5 days. Then, they go up. Next year they will be at least 3 times the price - at best.
> 17.11.16, 10:52:44: PF: How much do they cost, I'm ready to buy the very best
> 17.11.16, 19:56:38: Yura USA Vanetik: Let me verify costs. call me and I will explain several options.
>
> 18.11.16, 19:43:36: Yura USA Vanetik: Best VIP 100k per person. 3 days includes top briefings tickets to inaugural ball, etc. photo opps most likely. There are levels below that as well.
> 18.11.16, 19:44:21: Yura USA Vanetik: Hotels should be booked now and payments handled as soon as possible.
> 18.11.16, 21:54:25: PF: I'll take two tickets, when is it and what kind of documents are needed from me?
> 18.11.16, 22:49:16: Yura USA Vanetik: Passports email to me. Will send you wire information later today.

29.11.16, 21:06:49: Yura USA Vanetik: Hi Pavel. Everything is done. I now have what seems to be the final layout. There are a few "nuances" to go over. Let's chat a little later.
29.11.16, 21:12:29: PF: Hi, Thanks, I'll wait for a call.
30.11.16, 1:51:50: Yura USA Vanetik: Cabinet Dinner – 2 tickets
Victory Reception – 4 tickets
Inaugural Concert and Fireworks – 4 tickets
Parade – 4 VIP Tickets
Inaugural Ball Premier Access – 2 tickets
Presidential Swearing-In Ceremony – 2 tickets
This is the VIP package that we bought. There are corp VIP packages as well. I will review everything tonight and will connect with you tomorrow am or this evening (your am)
30.11.16, 1:57:48: PF: Thanks

Excerpted from 3-ER-400–401.

The *Bustamante* case on which Fuks relies to support his argument is readily

distinguishable. It involved an attempt by the plaintiff to form a joint venture with

the defendant that would launch a new company to market and sell in Mexico new

versions of defendant's software products adapted for users Mexico. *Bustamante v.

Intuit, Inc*. 141 Cal. App. 4th 199, 200-206 (2006). But whether the parties would

move forward with the joint venture depended on obtaining funding commitments

from outside venture capitalists or private investors, which ultimately did not

occur. *Id*. at 209-215.

This case does not involve a potential joint venture to establish a new,

ongoing business concern to market and sell products to a new market that was

contingent on funding and other matters that the parties were continuing to

negotiate. This case involves a simple and straightforward agreement concerning a

single transaction—the sale and purchase of a VIP inauguration ticket package that

included a specific number of tickets to six specific events for $200,000.

28

### 3. The District Court Did Not Err In Finding Sufficient Consideration to Establish An Agreement

The oral and documentary evidence establishes that Fuks had $200,000 sent to Vanetik in exchange for the promised VIP inauguration ticket package and in accordance with the instructions Vanetik provided. That payment satisfies the consideration requirement regardless of the bank account from which the funds were wired.

### 4. The District Court Did Not Err In Not Finding That The Contract Had An Unlawful Object

The district court properly dismissed any issue over legal issues pertaining to foreign nationals, given that attendance was allowed at certain events and nationals could be guests at others.

Thus, the district court did not err in finding that the parties entered into a valid written agreement.[7]

### C. The District Court Did Not Err In Finding That Fuks Performed

As already established, the parties' agreement was simple—Vanetik agreed to provide Fuks with a VIP inauguration ticket package and Fuks agreed to pay $200,000 for the ticket package. The District Court did not err when it found that

---

[7] If this Court were to reverse on this issue, the district court would need to revisit Fuks's unjust enrichment claim. The district court found against Fuks on that claim solely because of the valid express contract covering the same subject matter. 1-ER-19.

Fuks performed by wiring the $200,000 he agreed to pay in accordance with the instructions given by Vanetik.

### D. The District Court Did Not Err In Finding That Vanetik Breached The Parties' Agreement And That Fuks Suffered Damages In The Amount Of $200,000.

Consistent with the WhatsApp messages exchanged between the parties and the credible witness testimony from Fuks, the district court properly found that: (i) Vanetik agreed to provide Fuks a VIP ticket package comprising two tickets to the Cabinet Dinner, four tickets to the Victory Reception, four tickets to the Inaugural Concert and Fireworks Parade; two tickets to the Inaugural Ball Premier Access; and two tickets to the Presidential Swearing-In Ceremony, and (ii) Vanetik failed to provide those tickets to Fuks. 3-ER-401; 2-ER-61. Thus, the court did not err in finding that Vanetik breached the parties' agreement.

Likewise, given Fuks agreed to pay $200,000 for the promised VIP package that Vanetik never provided, the district court did not err in finding that Fuks is entitled to a return of the full $200,000 purchase price. Vanetik's bait and switch scheme, in which sent Fuks to events he did not want to attend provides no basis to reduce Fuks's damages.

### E. The District Court Did Not Err In Finding Fuks Suffered Damages In The Amount Of $200,000.

Consistent with the WhatsApp messages exchanged between the parties and the credible witness testimony from Fuks, the district court properly found that:

(i) Vanetik agreed to provide Fuks a VIP ticket package comprising two tickets to the Cabinet Dinner, four tickets to the Victory Reception, four tickets to the Inaugural Concert and Fireworks Parade; two tickets to the Inaugural Ball Premier Access; and two tickets to the Presidential Swearing-In Ceremony, and (ii) Vanetik failed to provide those tickets to Fuks. 3-ER-401; 2-ER-61. Thus, the court did not err in finding that Vanetik breached the parties' agreement.

Thus, this Court should affirm the District Court's judgment in Fuks's favor on his breach of contract claim.

## CONCLUSION

For the foregoing reasons, Pavel Fuks respectfully requests that this Court affirm the judgment of the district court in its entirety.

31

Respectfully submitted,

DATED:  March 1, 2023          */s/ John W. Lomas, Jr.*
_____

John W. Lomas, Jr.
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street, NW, Ste. 700
Washington, DC 20001
202.220.8049 (phone)
202.637.3593 (fax)
johnlomas@eversheds-sutherland.com

Joseph R. Ashby
ASHBY LAW FIRM
811 Wilshire Blvd., 17th Floor
Los Angeles, CA 90017
213.817.7785 (phone)
joseph@ashbylawfirm.com

*Attorneys for Respondent and Appellee*
*Thales Avionics, Inc.*

32

## STATEMENT OF RELATED CASES

The undersigned attorney states the following:

I am unaware of any related cases currently pending in this court.

DATED:  March 1, 2023

/s/ John W. Lomas, Jr.
John W. Lomas, Jr.

*Attorneys for Respondent and Appellee*
*Thales Avionics, Inc.*

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)** _____ 22-55794 _____

I am the attorney or self-represented party.

**This brief contains 7,173 words,** including 810 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief _(select only one)_:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because _(select only one)_:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _ /s/ John W. Lomas, Jr. _____ **Date** _ March 1, 2023 _____

34

## PROOF OF SERVICE

I hereby certify that the foregoing brief was served on counsel for Defendant and Appellant Yuri Vanetik via the Court's electronic filing system.

DATED: March 1, 2023

*/s/ John W. Lomas, Jr.*
John W. Lomas, Jr.

*One of the Attorneys for Plaintiff and Appellee Pavel Fuks*

35